IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TOM OLSEN, NAOMI OLSEN, et al.,

       Plaintiffs,

v.                                    No. CIV-02-0875   JB/WDS

QUALITY CONTINUUM HOSPICE, INC.,
a New Mexico corporation, DOES 1 through
100, inclusive; ABC CORPORATIONS I
through XX, inclusive; and BLACK & WHITE
PARTNERSHIP I through XX, inclusive,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Quality Continuum Hospice, Inc.'s

Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed August 25, 2003 (Doc. 14).[1]  The

primary issue is whether the Plaintiffs' Complaint sets forth a federal question that confers jurisdiction

on this Court.  Because the Court concludes that the Plaintiffs' Complaint does not present a question

of federal law, and that no other jurisdictional basis exists, the Court will grant Quality Continuum's

motion and dismiss this case for lack of jurisdiction.

## BACKGROUND

Plaintiff Tom Olsen was injured in an industrial accident in 1978.  See Plaintiffs' Opposition

to Defendant's Motion For Dismissal at 2, filed September 15, 2003 (Doc. 18).  Olsen is thus a long-

term beneficiary of the Social Security System.  See id.  He is also enrolled in the federal Medicare

---

[1] The Plaintiffs ("Olsen") identify Defendant RUAH Enterprises, Inc., d/b/a Quality Continuum Hospice and Healthcare as Quality Continuum Hospice, Inc.  The Court will refer to the Defendant as Quality Continuum.

program.  See id.

Olsen suffers from an incurable disease known as Lymphadema.  See id. at 4.  Olsen's pain is so severe that he is confined to bed.  See id. at 5.  Olsen is 47 years old.  See id.  Other than massage therapy with accompanying compression garments, nothing is known to medical science to relieve the severe and debilitating pain associated with this disease.  See id.

After physicians informed Olsen that he was a "terminal ill person," Olsen entered into a "[h]ospice care contract" with Quality Continuum.  Id. at 2.  Quality Continuum is a private sector New Mexico corporation that provides hospice services for seriously and terminally ill individuals.  The contract provided that, for a flat monthly fee, Quality Continuum would provide all services needed to keep Olsen as pain free and comfortable as possible during the time he is terminally ill, and would provide nursing care, transportation, and prescriptions.  See id.  The contract between Olsen and Quality Continuum forbids him from participating in traditional "fee-for-service" between health care providers and recipients.  See id. at 2-3.  According to Olsen, the Health Care Finance Administration and other financial intermediaries process payments and pay Quality Continuum a flat monthly fee, regardless of the costs or expenditures.  See id. at 3.  In cases in which the hospice costs are minimal or nothing at all, this flat fee represents a profit to the medical provider; in other cases, where the costs or expenses exceed the monthly fee under the program, the hospice contractor takes a loss.  See id.  The contract does not allow the hospice contractor to withdraw when costs exceed the monthly fee.  See id.

Olsen's Complaint sets forth numerous common law and statutory causes of action premised on Quality Continuum's alleged failure to provide him with certain medical treatment.  See Complaint at 6-8, filed July 23, 2002 (Doc. 1).  The treatment that he sought from Quality Continuum is manual

lymphatic drainage, a form of massage which he alleges provides pain relief, reduces swelling (and hence decreases tissue damage), increases fluid drainage, decreases chances of secondary infection, and decreases the excessive discomfort that victims of Lymphadema suffer. Olsen contends that the American Medical Association recognizes this treatment.

Olsen contends that Quality Continuum's medical director prescribed this "palliative" treatment.  Olsen argues that Quality Continuum's owner, Sheila Nipper, overruled the doctor's prescription and refused to provide the prescribed services.  Olsen asserts that Nipper is not a doctor or a physician.

Olsen contends that, despite the prohibition against disenrolling him from Quality Continuum's care when costs exceed reimbursement, Quality Continuum did that.  Olsen asserts that Quality Continuum used a variety of fanciful pretenses and fraudulent excuses, and maintained that the medical care that Olsen sought from Quality Continuum under the Medicare Hospice program was "curative" rather than "palliative."  Quality Continuum responds that it is not its duty to provide such "curative" care.

Olsen does not dispute that it is not Quality Continuum's duty to provide "curative" care. Rather, Olsen contends that the treatment he sought was, in fact, not "curative."  The treatment that he requested from Quality Continuum was to decrease his pain and suffering, not to cure him of an incurable condition.

Olsen contends that the facts alleged show that Quality Continuum realized the costs to provide him with the prescribed manual lymphatic drainage would exceed the contractually allowed flat monthly fee from Medicare.  In an effort to circumvent Quality Continuum's responsibility to provide "palliative" treatment that the medical director had prescribed, Nipper called the treatment

"curative."

Olsen argues that this semantic re-labeling is an excuse that Nipper is using to avoid Quality Continuum's legal responsibility and duty to provide him "palliative care." Olsen contends that, regardless what Nipper calls this treatment, it remains a recognized palliative treatment, and that it is Quality Continuum's legal and ethical duty to provide it to him. Olsen asserts that Quality Continuum's setting of its financial interest above his need for palliative therapy violates Quality Continuum's contractual obligations to provide him Medicare services.

Olsen also contends that Quality Continuum's decision is detrimental to him by unduly restricting the scope of his treatments. Olsen asserts that Nipper's decision was an intentional act designed to substantially decrease the quality of life for the time that he is alive.

At the time of the alleged wrongs, Olsen had recently moved to New Mexico from California. Olsen is now back in California. Olsen contends that the Court has jurisdiction over these causes of action because the Plaintiffs allege that they were injured "under the auspices of the United States Social Security Act of 1965 [and] . . . the Medicare program[.]" Complaint at 2.

Quality Continuum denies all of the Plaintiffs' allegations. Quality Continuum moves, under rules 12(b)(1) and 12(h)(3) of the Federal Rules of Civil Procedure, for an order dismissing the Plaintiffs' Complaint for lack of subject matter jurisdiction. At oral argument, Olsen clarified that, although he listed numerous defendants on the face of his Complaint, Quality Continuum is the only defendant in this action. See Transcript of Motion Proceedings at 18:18-25; id. 19:20-23.[2]

---

[2] The Court's citations to the transcript refer to the Court Reporter's original, unedited version. Any finalized transcript may contain slightly different page and/or line numbers.

<u>ANALYSIS</u>

Olsen does not allege diversity of citizenship as a basis for jurisdiction under 28 U.S.C. § 1332. The allegations in Olsen's Complaint also do not present a question of federal law that would grant the Court jurisdiction under 28 U.S.C. § 1331. The Court therefore lacks subject matter jurisdiction over Olsen's claims and will dismiss the Complaint.

I.      **THE COURT DOES NOT HAVE A BASIS FOR DIVERSITY JURISDICTION.**

Olsen did not originally assert diversity jurisdiction in his Complaint, nor has he amended it to do so.

> We examine the face of the complaint to determine whether a party has adequately presented facts sufficient to establish diversity jurisdiction. The party asserting jurisdiction must allege facts essential to show jurisdiction. Thus, the complaint must allege that the plaintiff and defendant are citizens of different states and that the amount in controversy is greater than $75,000. 28 U.S.C. § 1332(a). Where the pleadings are inadequate, we may review the record to find evidence that diversity exists.

<u>Rice v. Office of Servicemembers' Group Life Ins.</u>, 260 F.3d 1240, 1245 (internal quotation marks and citation omitted). The Complaint shows the Plaintiffs' city and state as Santa Fe, New Mexico. <u>See</u> Complaint at 8. Quality Continuum is a New Mexico corporation. <u>See</u> Motion to Dismiss at 1. Accordingly, there is no basis for diversity jurisdiction in this case.

Olsen suggests in his Response that the Court may have diversity jurisdiction over this matter because he moved to California after filing his Complaint. The Court, however, must determine diversity jurisdiction by the facts that exist at the time the plaintiff files the complaint, and subsequent changes in those facts have no bearing on this determination. <u>See, e.g., Newman-Green, Inc. v. Alfonzo-Larrain</u>, 490 U.S. 826, 830 (1989)(holding that the court determines whether diversity requirements are satisfied at time the plaintiff files complaint); <u>Mollan v. Torrance</u>, 22 U.S. 537, 539

(1824)(holding jurisdiction of the court depends upon the state of things at the time the action is brought, and that once vested, jurisdiction is not changed by subsequent events); Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc., 166 F.3d 59, 62 (2d Cir. 1999)(stating "time of filing" rule is that § 1332(a) diversity requirements are determined at time of filing); Johnston v. Cordell Nat'l Bank, 421 F.2d 1310, 1311 (10th Cir. 1970)(same).  Under these authorities, whether Olsen later moved to California is legally irrelevant for the purpose of determining diversity jurisdiction.

Finally, Olsen has not alleged sufficient facts for the Court to determine whether his claims meet the amount-in-controversy requirement of 28 U.S.C. § 1332.  His Complaint seeks $10,000.00 in "costs" and an unspecified amount for other damages.   Section 1332(a) requires the matter in controversy to "exceed $75,000, exclusive of interests and costs," and that the parties be citizens of different states.  28 U.S.C. § 1332(a).  Olsen must therefore put into the record sufficient facts for the Court to find that the amount in controversy will be greater than $75,000.  Olsen has not met that burden here.

## II.   THE ALLEGATIONS OF OLSEN'S COMPLAINT DO NOT PRESENT A FEDERAL QUESTION.

The Court cannot exercise jurisdiction over the claims in Olsen's Complaint pursuant to 28 U.S.C. § 1331 unless those claims present a federal question.  See Nicodemus v. Union Pac. Corp., 318 F.3d 1231, 1235 (10th Cir. 2003)(citing Morris v. City of Hobart, 39 F.3d 1105, 1111 (10th Cir. 1994)).  A claim presents a federal question only when: (i) federal law creates the cause of action; or (ii) "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  Nicodemus v. Union Pac. Corp., 318 F.3d at 1235.  Olsen's Complaint does not satisfy either

requirement for finding a federal question.

**A.    FEDERAL LAW DOES NOT CREATE OLSEN'S CAUSES OF ACTION.**

To the extent that Olsen seeks to establish jurisdiction under the first category of "federal question" cases, he bears the burden of showing that a private right of action exists under "the United States Social Security Act of 1965 [and] . . . the Medicare program" to redress the harm that he alleges he suffered.  See Suter v. Artist M., 503 U.S. 347, 363-64 (1992).  It is not sufficient that he allege Quality Continuum violated these statutes and that he was injured as a result of those violations.  See Hartman v. Kickapoo Tribe Gaming Comm'n, 319 F.3d 1230, 1232 (10th Cir. 2003). Olsen has not made the necessary showing.

Quality Continuum represents that it has been unable to locate any case from any jurisdiction which indicates that either the Social Security Act of 1965 or any Medicare regulation creates a private right of action under which patients may sue medical providers for improper treatment by a private sector corporation.  The Court has conducted its own search and did not find any such statutory or case law.  Accordingly, the Court may not exercise federal question jurisdiction over Olsen's claims on this basis.

**B.    OLSEN'S RIGHT TO RELIEF DOES NOT NECESSARILY DEPEND ON RESOLVING A SUBSTANTIAL QUESTION OF FEDERAL LAW.**

If Olsen seeks to establish jurisdiction under the second category of "federal question" cases, the Court must determine whether "'some substantial, disputed question of federal law is a necessary element of one of [his] well-pleaded state claims.'"  Nicodemus v. Union Pac. Corp., 318 F.3d at 1236 (quoting Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal., 463 U.S. 1, 13 (1983)).  In doing so, the Court must "exercise prudence and restraint," and should "focus

on whether Congress evidenced an intent to provide a federal forum." Nicodemus v. Union Pac. Corp., 318 F.3d at 1236 (citing Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. 804, 810 (1986), and Morris v. City of Hobart, 39 F.3d at 1111)). The "surest indicator" of such congressional intent "is whether the federal statute under consideration created a private right of action." Nicodemus v. Union Pac. Corp., 318 F.3d at 1237 (citing Rice v. Office of Servicemembers' Group Life Ins., 260 F.3d 1240, 1245 (10th Cir. 2001)). If not, "it would . . . flout, or at least undermine, congressional intent to conclude that federal courts might nevertheless exercise federal question jurisdiction." Nicodemus v. Union Pac. Corp., 318 F.3d at 1237 (citing Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. at 812). Also, a court should "hesitate to exercise jurisdiction" over a cause of action when it involves a "subject traditionally relegated to state law." Nicodemus v. Union Pac. Corp., 318 F.2d at 1238 (citing Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. at 811).

As noted above, the Social Security Act of 1965 does not provide for any private right of action for a patient to seek redress against a provider for allegedly improper medical treatment. This lack of private right of action is a "sure indicator" that Congress did not intend for federal courts to have 28 U.S.C. § 1331 jurisdiction over cases, such as this one, which, at their heart, involve claims by patients against medical providers for improper treatment. See Nicodemus v. Union Pac. Corp., 318 F.3d 1237. "[T]he congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal question jurisdiction." Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. at 814.

Furthermore, Olsen's listed causes of action all appear to arise under either New Mexico common law or New Mexico statutes. The source of these claims also militates against the Court's

exercise of jurisdiction here.  See Nicodemus v. Union Pac. Corp., 318 F.3d at 1238 (noting that the court would decline to exercise jurisdiction over claims because, among other things, those claims arose under Wyoming tort law).  Thus, an analysis of the factors discussed above indicates that Olsen's right to relief does not depend on the resolution of a question of federal law.  The Court therefore lacks jurisdiction over this matter.

At least one federal circuit court has reached the same conclusion when confronted with a similar issue.  In Ardary v. Aetna Health Plans of California, Inc, 98 F.3d. 496 (9th Cir. 1996), the United States Court of Appeals for the Ninth Circuit stated:

> This case presents a thorny jurisdictional question: does the Medicare Act, which provides for exclusive administrative review of all claims "arising under" that Act, apply to preclude the heirs of a deceased Medicare beneficiary from bringing state law claims for wrongful death against a private Medicare provider when those claims do not seek recovery of Medicare benefits but instead seek compensatory and punitive damages on the grounds that the provider improperly denied emergency medical services and misrepresented its managed care plan to the beneficiary?

Id. at 499.  The Court of Appeals of the Ninth Circuit observed that the resolution of this question turns on whether the state law claims are ones "arising under" the Act.  Id.

The defendants in Ardary v. Aetna Health Plans of California, Inc. argued that the entire complaint "arises under" the Act because the claims relate to a dispute concerning the denial of Medicare benefits.  Id.  The Ninth Circuit rejected this interpretation, because the complaint did not "include any claims in which both the standing and the substantive basis for the presentation of the claims is the Act."  Id. (internal quotation marks and citation omitted).  In addition, like Olsen, the Ardarys were not seeking to recover Medicare benefits, but rather were seeking damages under state law.  See id. at 500.  In this case, the claims also arise under state law, not the Medicare Act, and thus there is no federal question jurisdiction.

Several unpublished opinions also indicate that other federal courts have determined that claims which essentially amount to medical malpractice claims do not present a federal question within the meaning of 28 U.S.C. § 1331.  See Kosa v. Lancaster Gen. Hosp., Inc., 2002 WL 265078 (N.D. Tex. Feb. 20, 2002)("Plaintiffs' complaint is predicated on alleged acts and omissions constituting medical malpractice . . . [and therefore] no action is alleged under this court's federal question jurisdiction."); Obunugafor v. Borchert, 2001 WL 1255929 (S.D.N.Y. Oct. 19, 2001)(holding that pro se plaintiff's complaint against government hospital for "medical neglect and failure to diagnose a disease for a period of over five years" arose from New York state law and did not present a federal question).  The Court reaches the same result here.

### C.   42 U.S.C. § 405 (g) AND (h) DO NOT PROVIDE A BASIS FOR FEDERAL QUESTION JURISDICTION.

In his response to Quality Continuum's motion, Olsen initially argues that his Complaint presents a federal question because it primarily arises under the Medicare Act and that his claim is inextricably intertwined with a claim for Medicare benefits.  Olsen asserts that: (i) he was entitled to receive certain medical treatment under the Medicare Act; (ii) he contracted with Quality Continuum to provide him with that treatment; and (iii) Medicare paid Quality Continuum for that treatment.  Olsen reasons that, given these three facts, a claim that Quality Continuum failed to provide Mr. Olsen with all the treatment to which he was entitled is necessarily brought pursuant to the Medicare Act and must therefore be heard in a federal forum pursuant to 42 U.S.C. §§ 405(g) and (h).

This argument lacks a basis in law.  As noted above, to establish federal question jurisdiction, Olsen bears the burden to show either that Congress provided him a private right of action under the Medicare statutes to seek redress for the harms he asserts, or that his claims otherwise depend on the

-10-

resolution of a substantial question of federal law.  Olsen has not submitted authority in support of either proposition.

Sections 405(g) and (h) provide that a party aggrieved by a final benefits decision of the Commissioner of Social Security may obtain judicial review within sixty days of the decision.  Those provisions are not relevant to this case.  Olsen has not asked this Court to review a decision by the Commissioner of Social Security.

Olsen next argues that his claims are an attempt to recover Medicare payments made and therefore present a federal question because "Medicare provides for federal adjudication for questions involving secondary payee and the questions related to reimbursement of Medi[c]are claims[.]" Opposition to Motion For Dismissal at 6.  Olsen contends that he is limited to a federal forum.  This argument also does not persuade the Court.

The Medicare secondary payer statute deals with Medicare's subrogation rights.  See Zinman v. Shalala, 835 F. Supp. 1163, 1168 (N.D. Cal. 1993)(finding that the purpose of 42 U.S.C. § 1395y is to make Medicare's liability secondary in some instances).  It does not provide a private right of action to persons to recover Medicare payments, either for Medicare's benefit or their own benefit. Accordingly, this statute is not relevant in this case and does not establish that Olsen's Complaint presents a federal question.

This case does not arise under the Social Security Act.  It does not arise under the Medicare Act.  This case is not one for Medicare benefits, but for damages.  When those two Acts are read with 42 U.S.C. § 405 (g) and (h), the Court does not believe that this Court has jurisdiction over the Plaintiffs' claims.

### D.    THE MEDICARE ACT DOES NOT PREEMPT STATE LAW CLAIMS AGAINST HEALTH CARE PROVIDERS.

One narrow exception to the well-pled complaint rule is the complete preemption doctrine. See Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (1987).   Complete preemption would confer federal jurisdiction.   See id.   Olsen contends that the Medicare Act "completely" preempts state law claims.

Olsen is incorrect on the law.   The Medicare Act does not completely preempt all state law claims.   See Hofler v. AETNA U.S. Healthcare of Cal., Inc., 296 F.3d 764, 768 (9th Cir. 2002)(holding Medicare Act does not preempt state law claims against healthcare providers); Ardary v. AETNA Health Plans of Cal., Inc., 98 F.3d 496, 501 (9th Cir. 1996)(holding administrative procedures under Medicare Act do not preempt state law claims when claims do not "arise under" the Act); Nott v. AETNA U.S. Healthcare, Inc., 2004 WL 103176 (E.D. Pa. Jan, 23, 2004)(holding the Medicare Act does not preempt state law claims because (i) there is no civil enforcement scheme under Medicare to replace the state law system and (ii) the Act does not clearly express Congressional intent to preempt all state law claims); Palmer v. St. Joseph Healthcare P.S.O., Inc., 77 P.3d 560, 134 N.M. 405 (Ct. App. 2003)(holding Medicare Act does not preempt claims against health care providers under New Mexico law).

Olsen suggests that 42 U.S.C. § 1395w-26 preempts his state law claims and that he must proceed in a federal forum.   The preemption standards of § 1395w-26, however, only apply to override contrary state law standards regarding the solvency of certain provider-sponsored organizations.   Again, § 1395w-26 does not apply to the facts and claims in this case.   Accordingly, this statute is inapplicable here as well.

**E.      THE EIGHTH AMENDMENT DOES NOT PROVIDE A JURISDICTIONAL BASIS IN THIS CASE.**

While not in his Complaint, Olsen contends in his brief that Quality Continuum's actions also violated his Eighth Amendment rights.  <u>See</u>  Opposition to Motion For Dismissal at 6-7.  He likens his situation to ones where prison officials refuse to provide necessary medical attention to prisoners.  "Under the 'well-pleaded complaint' rule, the plaintiff is considered the 'master of the claim' and thus the federal question giving rise to jurisdiction must appear on the face of the complaint."  <u>Karnes v. Boeing Co.</u>, 335 F.3d 1189, 1192 (10th Cir. 2003)(quoting <u>Garley v. Sandia Corp.</u>, 236 F.3d 1200, 1207 (10th Cir. 2001)).  Because Olsen did not include this allegation in his Complaint, the Court need not reach the question whether such a claim is available in an action against a private sector medical provider.

In conclusion, Olsen has not established that this Court has either federal question or diversity jurisdiction over his claims.  Specifically, Olsen has not demonstrated that federal law provides him with a private right of action or that his claims otherwise depend on the resolution of a substantial question of federal law.  Despite Olsen's references to the Social Security Act and Medicare regulations, his claims do not present a federal question over which the Court may exercise 28 U.S.C. § 1331 jurisdiction.  Therefore, Olsen has not demonstrated that this Court has federal question jurisdiction over this matter.  Pursuant to rule 12 (h)(3), and the principles in the cases discussed above, Olsen has not established that the Court has either federal question or diversity jurisdiction over their claims.  The Court will dismiss his Complaint and the claims therein.[3]

---

[3] Because the Court is dismissing the Plaintiffs' claims for lack of jurisdiction, the Court will not decide whether the Complaint states a cause of action for which relief can be granted.  That is an issue for a state court or a federal court with diversity jurisdiction to decide.

**IT IS ORDERED** that the Defendant's Motion for Dismissal for Want of Subject Matter

Jurisdiction is granted.  The Plaintiffs' Complaint and claims are dismissed for lack of jurisdiction.



_____
UNITED STATES DISTRICT JUDGE

Tom Olsen
Naomi Olsen
San Francisco, California

       *Plaintiffs Pro Se*


S. Charles Archuleta
Ben Feuchter
Keleher & McLeod, P.A.
Albuquerque, New Mexico

      *Attorneys for Defendant RUAH Enterprises, Inc.,*
      *d/b/a Quality Continuum Hospice and Healthcare*